(June 10, 1915.)

STATE, Respondent, v. J. J. BOUCHARD, Appellant.

[149 Pac. 464.]

IMPEACHMENT OF WITNESS—GENERAL REPUTATION—STRIKING OF TESTI-
   MONY—DISCRETION OF COURT—INSTRUCTIONS TO JURY—DISCUSSION
   OF ERRORS—WEIGHT OF EVIDENCE.

1. Where a witness, having stated that the reputation of the com-
plaining witness for truth, honesty or integrity in the community
where he resided was bad, was asked, "In view of that reputation,
would you believe him under oath?" in the absence of a proper
foundation having been laid to show that the witness was in pos-
session of such knowledge as would make him a competent witness
to answer such question, it was not error for the court to refuse
to permit the witness to answer.

2. Whether such a question is a proper one under the statutes
of this state, *quaere.*

3. *Held,* that in view of all the evidence in this case the action
of the trial court in striking out a portion of the testimony of
witness Trummel who, after testifying that the reputation of the
complaining witness in the community of St. Maries was bad, upon
cross-examination and apparently not responsive to the question,
recited street gossip and conversations overheard by him of par-
ticular acts of bad conduct of the prosecuting witness, was not
prejudicial error, the right to strike such testimony being largely
within the sound discretion of the trial court, and where there is no
abuse of such discretion, the verdict of the jury will not be dis-
turbed. However, the practice of eliciting immaterial evidence
and then moving to strike such testimony from the record is not to
be commended.

4. Where the record discloses no prejudice, motive, feeling of
ill-will or revenge on the part of the complaining witness against
the defendant, and where it does not appear that the complaining

witness was specially employed to make up evidence against the defendant, it is not error for the court to refuse to give an instruction to the jury that "Greater care should be exercised in weighing the testimony of informers, detectives and other persons specially employed to make up evidence against the defendant, than in the case of witnesses who are wholly disinterested."

5. The credibility of the witnesses, as well as the weight to be given to their testimony, is exclusively for the jury, and it would be error for the court to indicate the degree of credibility or the weight that should be given to the testimony of any witness.

6. Where specifications of error appear for the first time in counsel's brief, upon an appeal from a judgment and from an order denying a new trial, and do not appear in the transcript or in appellant's application for a new trial, such specifications of error will not be considered.

7. It is within the province of the court to say whether or not the evidence is competent or admissible, but its weight, credibility and sufficiency are primarily for the jury. There is no more justification for the court to assume the functions of the jury than for the jury to assume the duties of the court. Sec. 4824, Rev. Codes, provides: "Upon an appeal from a judgment, the court may review the verdict or decision and any intermediate order or decision, if excepted to, which involves the merits or necessarily affects the judgment, except a decision or order from which an appeal might have been taken: Provided, that whenever there is substantial evidence to support a verdict the same shall not be set aside."

8. Where there is evidence to sustain the verdict and there is a substantial conflict in the evidence, the verdict will not be disturbed. (*State v. Nesbit,* 4 Ida. 548, 43 Pac. 66; *State v. Silva,* 21 Ida. 247, 120 Pac. 835; *State v. Downing,* 23 Ida. 540, 130 Pac. 461; *State v. Hopkins,* 26 Ida. 741, 145 Pac. 1095, approved and followed.)

9. *Held,* that the court did not err in refusing to grant a new trial.

APPEAL from the District Court of the Eighth Judicial District for Benewah, formerly Kootenai, County. Hon. R. N. Dunn, Judge.

Prosecution for the crime of selling intoxicating liquors in a prohibition district. Judgment of guilty, from which defendant appeals. *Affirmed.*

McFarland & McFarland and R. B. Norris, for Appellant.

After a witness has once testified that the general reputation of another witness, in the community in which he resides, for truth or veracity, honesty or integrity is bad, he may testify whether or not he would believe him under oath. (*Stevens v. Irwin,* 12 Cal. 306; *Wise v. Wakefield,* 118 Cal. 107, 50 Pac. 310; *Mitchell v. State,* 148 Ala. 618, 42 So. 1014; *Bullard v. Lambert,* 40 Ala. 204; *Spies v. People,* 122 Ill. 1, 3 Am. St. 320, 12 N. E. 865, 17 N. E. 898; *Knight v. House,* 29 Md. 194, 96 Am. Dec. 515; *Keator v. People,* 32 Mich. 484; *People v. Rector,* 19 Wend. (N. Y.) 569; *Hillis v. Wylie,* 26 Ohio St. 574; *Page v. Finley,* 8 Or. 45; *Lyman v. Philadelphia,* 56 Pa. 488; *State v. Murphey,* 48 S. C. 1, 25 S. E. 43. *Teese v. Huntington,* 23 How. (U. S.) 2, 16 L. ed. 479.)

The following instruction, requested by the defendant, "The jury are instructed that greater care should be exercised in weighing the testimony of informers, detectives and other persons specially employed to make up evidence against the defendant, than in the case of witnesses who are wholly disinterested," is a reasonable one, and the court, in refusing to give it, committed reversible error. (40 Cyc. 2655; *Heldt v. State,* 20 Neb. 492, 57 Am. Rep. 835, 30 N. W. 626; *Kastner v. State,* 58 Neb. 767, 79 N. W. 713.)

J. H. Peterson, Atty. Genl., E. G. Davis, T. C. Coffin and Herbert Wing, Assistants, and N. D. Wernette, for Respondent.

Perhaps the weight of authority is now against permitting a witness to testify as to his own opinion on reputation. (Greenleaf on Evidence, 15th ed., art. 461.)

"Although the propriety of such questions has been doubted, yet the great weight of authority sustains the practice." (Jones on Evidence, 2d ed., art. 862, and authorities there cited.)

Even the line of cases cited by counsel for appellant holds that "the opinion of the credibility of a witness is held to be admissible on the same ground that opinions in regard to sanity, disposition, temper, distances, velocity, etc., are ad-

missible.'' (*Phillips v. Kingfield,* 19 Me. 375, 36 Am. Dec. 760.)

The prevailing rule in the United States is to conform the inquiry to the reputation of the witness for truth and veracity. (*Dimick v. Downs,* 82 Ill. 570; *Rudsill v. Slingerland,* 18 Minn. 380; *Sargent v. Wilson,* 59 N. H. 396; *Shaw v. Emery,* 42 Me. 59; Jones on Evidence, 2d ed., art. 861.)

Under this rule inquiry cannot be made of the witness as to particular facts which tend to discredit the reputation of the person sought to be impeached. (*Johnson v. State,* 61 Ga. 305; *Dimick v. Downs, supra; Conley v. Meeker,* 85 N. Y. 618; *Shaefer v. Missouri Pac. R. Co.,* 98 Mo. App. 445, 72 S. W. 154; Jones on Evidence, 2d ed., art. 860.)

It is not within the proper province of the judge to instruct the jury as to the relative credibility of classes of witnesses whose testimony comes in conflict. (Jones on Evidence, 2d ed., art. 901; *Nelson v. Vorce,* 55 Ind. 455; *Hronek v. People,* 134 Ill. 139, 23 Am. St. 652, 24 N. E. 861, 8 L. R. A. 837.)

''While the jury may consider whether or not the testimony of a detective or private policeman should be taken with some allowance, yet an instruction to the effect that such evidence should be received with a large degree of caution has been held error.'' (*Hronek v. People, supra; State v. Hoxsie,* 15 R. I. 1, 2 Am. St. 838, 22 Atl. 1059; *Town of St. Charles v. O'Mailey,* 18 Ill. 407.)

BUDGE, J.—Appellant Bouchard was informed against, prosecuted for and convicted of the crime of wilfully and unlawfully selling intoxicating liquors in violation of law to one James Doyle on October 9, 1914, at St. Maries, then Kootenai, now Benewah county, Idaho.

Upon the verdict of the jury finding the defendant guilty of the unlawful sale of intoxicating liquors the court sentenced the appellant to ten days in the county jail and to pay a fine of $100 and the costs of the action, fixed by the court at $237. Within the time provided by the statutes and the orders of the court extending the time therefor, appellant duly and regularly made application for a new trial, which

was denied.   This is an appeal from the judgment and the order denying a new·trial.

Counsel for appellant has made twelve specifications of error.   We will consider only four of the alleged . errors. Those not considered, in our opinion, have no merit.   We will take up the assignments considered in their order.

First, counsel for appellant contends that the court erred in sustaining the state's objection to a question propounded to witness Keeton by counsel for defendant.   The witness Keeton was called to testify for the defendant touching the general reputation of the prosecuting witness for truth, honesty or integrity in the community of St. Maries, where he resided, and testified as follows: "I am acquainted with his [Charles E. Bonell, the prosecuting witness] general reputation for truth, honesty and integrity in that community [St. Maries] . . . . where I have known him to reside for the last two months.   It is bad."   Following the answer made by the witness, he was asked by counsel for the defendant: "Judging from that reputation, would you believe him under oath?"   Counsel for the state objected to the question, which objection was sustained by the court.   To this ruling of the court counsel for appellant excepted and assigns the same in this court as reversible error.

There are numerous authorities that hold this to be a proper question when the foundation for asking it has been laid, but in the absence of a proper foundation, the great weight of authority holds contrary to appellant's contention. The witness having stated that the reputation of the complaining witness for truth, honesty or integrity in the community of St. Maries, where he resided, was bad, the refusal of the court to permit the witness to answer what his judgment of that reputation was, and whether he would believe the prosecuting witness under oath, under the facts in this case, was not reversible error.   Keeton's acquaintance with Bonell was limited to a period of about two months, during which time he had seen him occasionally, their acquaintance being only casual.   It is, therefore, quite apparent from the record that the witness was not in possession of such knowl-

edge as would make him a competent witness, should it be admitted that the question was a proper one to be asked under the statutes of this state. (Jones on Evidence, vol. 5, secs. 860–862, and authorities there cited; *Dimick v. Downs,* 82 Ill. 570; *Rudsill v. Slingerland,* 18 Minn. 380.)

It is next contended by counsel for appellant under his third specification of error that the court erred in sustaining the motion of counsel for the state and in striking out the testimony of witness Trummel, who had been called as a character witness by the defendant. Trummel, after testifying that the reputation of Bonell in the community of St. Maries was bad, upon cross-examination by the state, and apparently not responsive to the question, recited street gossip and conversations overheard by him carried on by third parties, to the effect that the prosecuting witness Bonell was in the habit of beating his board bills, hotel bills, passing worthless checks, obtaining money under false pretenses, etc.

As held in the case of *State v. McLaughlin,* 149 Mo. 19, 33, 50 S. W. 315: "It is settled law that when a witness is called to sustain or attack the reputation of another witness, the opposite party may cross-examine him liberally as to his means of knowledge, and to test his own truthfulness, and it is largely a matter of discretion with the court how far such an examination shall be allowed. We think it would be an unwise exercise of our appellate jurisdiction to reverse a cause on this showing alone." While the authorities cited concur in holding that a liberal cross-examination should be allowed, they also hold that the extent to which it may go is largely in the discretion of the trial court. The extent to which a cross-examination relating to collateral matters may be carried on is within the sound discretion of the presiding judge. (*State v. Crow,* 107 Mo. 341, 17 S. W. 745; *State v. Rollins,* 77 Me. 380; *Commonwealth v. Foran,* 110 Mass. 179.)

In view of all the evidence in this case, we are of the opinion that the action of the court in striking out the testimony of witness Trummel upon motion of the county prosecuting attorney was not error, and worked no prejudice to the de-

fendant. The practice, however, of eliciting immaterial evidence and then moving to strike such testimony from the record is not to be commended.

The sixth assignment of error relied upon by counsel for a reversal of this cause is the refusal of the trial court to give the following instruction requested by the defendant, viz.:

"The jury are instructed that greater care should be exercised in weighing the testimony of informers, detectives and other persons specially employed to make up evidence against the defendant, than in the case of witnesses who are wholly disinterested."

In our opinion the instruction given by the court, No. 13, fully meets the objections urged by counsel, which is as follows:

"The jury are the sole judges of the facts in this case and of the credit to be given to the respective witnesses who have testified, and in passing upon the credibility of such witnesses, you have the right to take into consideration their *interest* in the result of the case, *their prejudices, motives or feelings of revenge, if any such have been shown or proven by the evidence,* and if the jury believe that any witness has testified falsely as to any material fact or point in this case, the jury are at liberty, unless the witness is corroborated by other credible evidence, to disregard the testimony of such witness in whole."

Where the evidence discloses deception, trickery, false pretenses, lying and deceit on the part of a person or persons employed to ferret out crime, a trial court should permit the fullest and most searching examination of the witness for the purposes of establishing his motive and inducement under which he acted, and no party should be allowed to keep back or conceal any fact that would tend to show that the witness or witnesses had an ulterior motive in bringing about the prosecution of the accused. And where it appears that trickery, deceit, duplicity or lying has been indulged in by any witness or witnesses, then, under such circumstances, it becomes the duty of the court to properly caution the jury in respect to the credibility of such witnesses, applying the prin-

ciple as indicated in counsel's proffered instruction. But where there is no evidence upon which such an instruction could be based, the credibility of any witness, as well as the weight to be given to his testimony, is exclusively for the jury, and it would be clearly error for the court to indicate the degree of credibility or the weight that should be given to the testimony of such witness.

The witness Bonell testified in substance that he gave Doyle a dollar to buy a bottle of whisky, and that Doyle went to Bouchard and together they walked into the baggage-room of the hotel managed by Bouchard, where the witness Bonell saw Doyle give Bouchard the dollar and receive in turn from Bouchard a bottle of whisky; that he, Bonell, was employed by the sheriff of Kootenai county to obtain evidence against violators of the local option law; that his compensation did not depend upon convictions of such violators. The record discloses no prejudice, motive or feeling of ill-will or revenge upon the part of the complaining witness against the defendant.

There is no evidence in the record in this case to the effect that the complaining witness was employed specially for the purpose of securing evidence against the defendant, or that he had an ulterior motive in making up evidence against the defendant. That being true, we are unable to find any authorities that would justify us in holding that it was prejudicial error for the court to refuse to give defendant's proposed instruction, and we are of the opinion that the instruction was properly refused. (See *State v. Hoxsie,* 15 R. I. 1, 4, 2 Am. St. 838, 22 Atl. 1059; *Commonwealth v. Trainor,* 123 Mass. 414; *O'Grady v. People,* 42 Colo. 312, 95 Pac. 346.)

In *State v. Rollins,* 77 Me. 380, the court said: "The employment of detectives is not in all cases discreditable. In many cases it is the only way of bringing offenders to justice. It is as important that laws should be enforced as it is that they should be enacted. If it is commendable in the legislature to enact laws prohibiting the sale of intoxicating liquors, . . . . it is equally commendable on the part of the

community to endeavor to enforce them; and persons who are willing to spend their time·. . . . in efforts to enforce such laws, should not be unnecessarily exposed to the ill-will of persons whose crimes are thereby detected." (*President & Trustees of the Town of St. Charles v. O'Mailey,* 18 Ill. 407; *Hronek v. People,* 134 Ill. 139, 23 Am. St. 652, 24 N. E. 861, 8 L. R. A. 837; *Nelson v. Vorce,* 55 Ind. 455.) Because they spend their time in assisting in the detection of law violations is no substantial reason why their testimony should be subject to any other test than is legally applied to the testimony of any other witness; even though it clearly appears that they are especially employed to obtain evidence against "boot-leggers," or that any greater care and caution should be exercised by the jury in passing upon the credibility of their testimony or the weight to be given it, than is required to be given by the jury to the weight and credibility of the testimony of any other witness, in the absence of evidence showing bias, prejudice, hatred or ill-will against, or trickery practiced upon, the defendant, for the express purpose of securing his conviction.

Specifications of error Nos. 9 and 10 involving the legality of the assessment of costs by the court against the defendant do not appear in the appellant's transcript on appeal, as settled and allowed by the trial judge. Said assignments are not mentioned in appellant's application for a new trial. Where, upon an appeal from a judgment and from an order denying a new trial, specifications of error do not appear in the transcript or in appellant's application for a new trial, but are urged for the first time in this court in appellant's brief, they will not be considered.

The eleventh assignment of error is: "The verdict and judgment are contrary to the evidence, and the evidence is insufficient to justify the verdict or judgment." Touching the sale of intoxicating liquor by the defendant Bouchard to Doyle the record is short, being in substance as follows:

That Charles E. Bonell who, for a short time prior to the arrest of the defendant, had been a resident of St. Maries,

was, through the instrumentality of certain residents of St. Maries, interested in the suppression of the liquor traffic in that community, placed in communication with the officers of Kootenai county. An arrangement was reached whereby Bonell was employed to aid in securing evidence against parties engaged in the unlawful sale of intoxicating liquors in the city and vicinity of St. Maries.

Bonell, in pursuance of said arrangement, returned to St. Maries and shortly thereafter, in front of the hotel managed by the defendant, met one James Doyle, a former acquaintance, with whom he had a conversation in which intoxicating liquors were discussed. He thereafter handed Doyle a dollar and asked Doyle to buy him a bottle of whisky from the defendant. Thereupon Doyle entered the hotel, found the defendant, and with him went into a rear room, called the baggage-room or storeroom, where the defendant delivered to Doyle a bottle of whisky and Doyle handed the defendant a dollar. The witness Bonell testified that he entered the room where the transaction took place and saw the money paid to the defendant and the whisky handed to Doyle by the defendant; that thereafter Doyle and Bonell walked a short distance from the hotel, where each took a drink out of the bottle and then separated. Within a few days after this occurrence, the witness delivered the balance of the whisky and the bottle to the deputy sheriff at Coeur d'Alene City, which, upon the trial, was introduced in evidence.

Defendant, upon the witness-stand, denied that he sold Doyle the whisky and Doyle denied buying the whisky from the defendant. There were a number of witnesses called to prove that the prosecuting witness' reputation for truth, honesty or integrity was bad in the community of St. Maries. The state called a number of witnesses in rebuttal to prove that the reputation of the prosecuting witness for truth, honesty or integrity in the community of St. Maries was good. The witness Bonell also testified that a few days after Doyle purchased the bottle of whisky, he purchased a drink of whisky from the defendant.

This in substance is the testimony that was submitted to the jury who, under proper instructions, found the defendant guilty.

The evidence offered in this case, as well as the conduct of the witnesses upon the trial, and their manner of testifying, were all considered by the jury in reaching their verdict. In this class of cases the difficulty rests principally in exposing the secret methods adopted by people engaged in the "boot-legging" business. Their standing in the community generally is well known. The methods adopted in conducting their unlawful business frequently rise up as silent witnesses against them, and furnish convincing evidence of their guilt. The conduct of the accused during the trial, his manner of testifying when supplemented with competent evidence, though not voluminous, is frequently sufficient to convince the minds of the jury beyond a reasonable doubt of his guilt.

It is within the province of the court to say whether or not evidence is competent or admissible, but its weight and credibility are primarily for the jury. There is no more justification for the court to assume the functions of the jury than there is for the jury to undertake to assume the duties of the court. Sec. 4824, Rev. Codes, provides: "Upon an appeal from a judgment, the court may review the verdict or decision and any intermediate order or decision, if excepted to, which involves the merits or necessarily affects the judgment, except a decision or order from which an appeal might have been taken: Provided, that whenever there is substantial evidence to support a verdict the same shall not be set aside."

In the case of *State v. Downing*, 23 Ida. 540, 130 Pac. 461, this court said: "Where there is a substantial conflict in the evidence and the evidence taken as a whole is sufficient to sustain the verdict, the verdict will not be disturbed." (*State v. Nesbit*, 4 Ida. 548, 43 Pac. 66; *State v. Silva*, 21 Ida. 247, 120 Pac. 835; *State v. Hopkins*, 26 Ida. 741, 145 Pac. 1095.)

It did not appear to the trial court in this case, on motion for a new trial, that the evidence was insufficient to sustain

the verdict, and after examining the case as presented to us we find that there is a substantial conflict in the evidence, and that the evidence is sufficient to sustain the verdict. We have also concluded that the court did not err in overruling appellant's motion for a new trial. The judgment is affirmed.

Sullivan, C. J., and Morgan, J., concur.