(July 15, 1916.)

## SOUTHWEST NATIONAL BANK OF KANSAS CITY, MISSOURI, Appellant, v. E. W. LINDSLEY et al., Respondents.

[158 Pac. 1082.]

NEGOTIABLE INSTRUMENTS—HOLDER IN DUE COURSE—BURDEN OF PROOF.

1. Every holder of a negotiable instrument is deemed *prima facie* to be a holder in due course, but when it is shown that the title of any person who has negotiated the instrument is defective, the burden is on the holder to prove that he acquired title as a holder in due course, except where a party became bound on the instrument prior to the acquisition of such defective title.

2. Sec. 3512, Rev. Codes, declares when a title to negotiable paper is defective.

3. Sec. 3509, Rev. Codes, defines a "holder of negotiable paper, in due course."

4. *Held,* that the evidence shows, without contradiction or conflict, that the appellant was a holder of said promissory note in due course.

5. While the jury is the judge of the evidence and the weight that should be given to it, it is not at liberty to ignore entirely evidence where there is no conflict in it and where there is nothing to indicate that the witness was testifying falsely.

6. *Held,* that the jury in rendering its verdict was misled or influenced by passion or prejudice.

[As to who is a *bona fide* holder of a note, see notes in 9 Am. Dec. 272; 44 Am. Dec. 698.]

APPEAL from the District Court of the Second Judicial District, in and for Idaho County. Hon. Edgar C. Steele, Judge.

Action on a promissory note. Judgment for defendants. *Reversed.*

A. S. Hardy, for Appellant.

The purchaser of a negotiable note before maturity is under no duty to make inquiry as to the origin of the note or of the consideration for it. Nor will mere suspicious circumstances, if any exist, be sufficient to defeat the recovery by the purchaser, if he was not guilty of actual fraud or such conduct as amounts to dishonesty. The only notice which will defeat the purchaser is actual knowledge of the fraud or defect in the note, or knowledge of such facts that his action in taking the instrument amounts to bad faith and shows dishonest motives. (*Vaughn v. Johnson,* 20 Ida. 669, 119 Pac. 879, 37 L. R. A., N. S., 816; *Vaughan v. Brandt,* 21 Ida. 628, 123 Pac. 591; *Goetz v. Bank of Kansas City,* 119 U. S. 551, 7 Sup. Ct. 318, 30 L. ed. 515; *Winter v. Nobs,* 19 Ida. 18, Ann. Cas. 1912C, 302, 112 Pac. 525; *Setzer v. Deal,* 135 N. C. 428, 47 S. E. 466; *Gray v. Boyle,* 55 Wash. 578, 133 Am. St. 1042, 104 Pac. 828; *Lehman v. Press,* 106 Iowa, 389, 76 N. W. 818.)

Where the evidence shows that the plaintiff is a holder in due course, and the circumstances are shown, and there is no conflict with such proof, it is the duty of the court to direct a verdict for the plaintiff. And on appeal in such case the court should order judgment for the plaintiff. (*Southwest Nat. Bank of Kansas City v. Baker*, 23 Ida. 428, 130 Pac. 799; *Exchange State Bank v. Taber*, 26 Ida. 723, 145 Pac. 1090; *Piper v. Neylon*, 93 Neb. 51, 139 N. W. 836; *Elk Valley Coal Co. v. Third Nat. Bank of Lexington*, 157 Ky. 617, 163 S. W. 766; *First National Bank etc. v. Humphreys* (Tex. Civ. App.), 166 S. W. 53; *First National Bank v. McNairy*, 122 Minn. 215, Ann. Cas. 1914D, 977, 142 N. W. 139; *First State Bank of Okla. City v. Tobin*, 39 Okl. 96, 134 Pac. 395; *Lowry Nat. Bank etc. v. Seymour*, 91 S. C. 305, 74 S. E. 648.)

Jas. De Haven, for Respondents.

The *bona fides* of a purchaser of negotiable paper, subject to defenses in the hands of the original payee, is a question for the jury. (*Winter v. Nobs*, 19 Ida. 18, Ann. Cas. 1912C, 302, 112 Pac. 525; *Park v. Johnson*, 20 Ida. 548, 119 Pac. 52; *Park v. Brandt*, 20 Ida. 660, 119 Pac. 877; *Vaughn v. Johnson*, 20 Ida. 669, 119 Pac. 879, 37 L. R. A., N. S., 816; *Winter v. Hutchins*, 20 Ida. 749, 119 Pac. 883.)

If the court is to take away from the jury and decide, as a matter of law, that a particular fact is established by the evidence, the evidence must be of such a nature as to leave no reasonable doubt of the fact, and there must be no substantial evidence, either direct or indirect, to the contrary. (*Union Investment Co. v. Rosenzweig*, 79 Wash. 112, 139 Pac. 874; *Richmond v. Tacoma Ry. & Power Co.*, 67 Wash. 444, 122 Pac. 351; *McNight v. Parsons*, 136 Iowa, 390, 125 Am. St. 265, 15 Ann. Cas. 149, 113 N. W. 858, 22 L. R. A., N. S., 718.)

"The bank being an interested party, the credibility of the testimony of the cashier was a matter for the jury to pass upon in the light of all the facts and circumstances surrounding the matter under inquiry." (*Joy v. Diefendorf*, 130 N. Y. 6, 27 Am. St. 484, 28 N. E. 602; *Canajoharie Bank v.*

*Diefendorf,* 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676; *Mee v. Carlson,* 22 S. D. 365, 117 N. W. 1033, 29 L. R. A., N. S., 351; *Citizens' Savings Bank v. Houtchens,* 64 Wash. 275, 116 Pac. 866; *Union National Bank v. Windsor,* 101 Minn. 470, 118 Am. St. 641, 11 Ann. Cas. 204, 112 N. W. 999.

SULLIVAN, C. J.—This is an action to recover the principal and interest due upon a certain joint and several promissory note, in the usual form, made and executed by respondents in favor of McLaughlin Brothers, in payment for a certain imported stallion, which note, it is alleged in the complaint, was, prior to its maturity, for a valuable consideration, in the usual course of business, sold and assigned to appellant.

Prior to the commencement of the action, W. A. Shatzer, one of the makers of the note, died and Frank S. Rice, administrator of his estate, was made a defendant in that capacity. A motion has been made in this court to substitute Elizabeth Shatzer as administratrix of the estate of W. A. Shatzer, deceased, as a respondent herein in place of Frank S. Rice, as administrator, Rice having resigned his administratorship since the appeal was taken and Elizabeth Shatzer having been appointed and qualified as administratrix of the estate. The application has been granted and the substitution made.

The defense disclosed by the amended answer is that respondents and S. Delmage and Henry J. Elfers entered into a contract with McLaughlin Brothers, through their agent, Emerson Mays, wherein it was agreed that respondents and Delmage and Elfers were to purchase a stallion from McLaughlin Brothers for the sum of $4,000, and were to give in payment therefor four promissory notes for $1,000 each; that pursuant to the agreement respondents executed the four notes, including the one sued upon, which were to be delivered to McLaughlin Brothers when signed by Delmage and Elfers; that at the same time and place, and as a part of the transaction, McLaughlin Brothers, through their agent, entered into three written agreements and one oral agreement with respondents, in substance as follows: 1. To hold each

of respondents liable upon the purchase price of the stallion, as evidenced by the promissory notes, for the sum of $400 only, being the price of one share in the White Bird Percheron Horse Company, which was then formed by respondents and Delmage and Elfers; 2. That McLaughlin Brothers would warrant and guarantee the stallion to prove to be a sixty per cent foal-getter, or if he should not prove to be so, to exchange him for a Percheron, Belgian or French Coach stallion free of any charge to respondents; 3. That in the event the stallion should die before the end of the breeding season of 1908, McLaughlin Brothers would replace him with a Percheron, Belgian or French Coach stallion; 4. That it was orally agreed that McLaughlin Brothers should maintain stables in Spokane, Washington, during the years 1907 and 1908 where a stallion could be selected by respondents in place of the one purchased, in the event he should prove to be unsatisfactory, or should not be a sixty per cent foal-getter, or should die before the end of the breeding season of 1908.

Upon the issues thus made by the pleadings, the cause was tried by the court with a jury and a verdict and judgment rendered and entered in favor of the defendants. The appeal is from the judgment.

The admission of certain evidence and the giving and the refusing to give certain instructions and the insufficiency of the evidence to support the verdict are assigned as error.

The main defense was that the title of McLaughlin Brothers, who negotiated said note, was defective and that said promissory note was procured by fraud and misrepresentation, and that the appellant is not a holder of said note in due course.

Sec. 3512, Rev. Codes, declares when the title to a negotiable instrument is defective, within the meaning of the law concerning negotiable instruments, and is as follows:

"The title of a person who negotiates an instrument is defective within the meaning of this title when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal

consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to fraud.'' (*Schellenberger v. Nourse,* 20 Ida. 323, 118 Pac. 508.)

The evidence admitted on the trial was sufficient to show that McLaughlin Brothers' title to said promissory note was defective. It then, under the statute, devolved upon the appellant bank to show that it was a holder in due course.

Sec. 3509, Rev. Codes, defines a holder of negotiable paper in due course as follows:

''A holder in due course, is a holder who has taken the instrument under the following conditions:

''First. That the instrument is complete and regular upon its face;

''Second. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

''Third. That he took it in good faith and for value;

''Fourth. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.''

Sec. 3516, Rev. Codes, provides: ''Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title.''

Since the title of McLaughlin Brothers to said note was shown to be defective, the provision of sec. 3516 applies, and the burden was placed upon appellant to prove that it acquired said promissory note as a holder in due course. The appellant bank was thereupon required to show that at the time it purchased the note it had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. (*Winter v. Nobs,* 19 Ida. 18, Ann. Cas. 1912C, 302, 112 Pac. 525; *Schellenberger v. Nourse,* 20 Ida. 323, 118 Pac. 508; *Park v. Johnson,* 20 Ida. 548, 119 Pac. 52; *Park v.*

*Brandt,* 20 Ida. 660, 119 Pac. 877; *Vaughn v. Johnson,* 20 Ida. 669, 119 Pac. 879, 37 L. R. A., N. S., 616; *Vaughan v. Brandt,* 21 Ida. 628, 123 Pac. 591.)

The following facts appear from the record: The note sued upon in this action bears date May 31, 1907, upon which date, or immediately thereafter, it was executed and delivered to McLaughlin Brothers' agent and by McLaughlins sold to the appellant on April 12, 1909. This latter date was practically two years after the note was executed and delivered. On May 15, 1909, one W. M. Moore, acting for and on behalf of the joint makers of the note sued upon, wrote to McLaughlin Brothers at St. Paul. In his letter he called attention to an agreement which seems to have been made but which is no part of the note in suit, to the effect that each of the joint makers of the note would be held only for his individual share in the horse and not for any other share should any of the others fail to pay their shares. He also stated that the stallion did not get sixty per cent of the producing mares with foal. He called attention to the fact that McLaughlin Brothers promised to replace the horse provided he did not possess the foal-getting qualities. He further stated: "Some of the shareholders also claim that Emerson Mays, your agent and manager, got their signatures through misrepresentation and fraudulent means and the company refuses to pay the notes," and that "the above horse company also states that the horse is not worth more than one-half of the price contracted for and that they make the following offer for the said horse 'Endurant'; that is, that they will pay you in cash one-half the total amount due on the horse and you surrender all the notes given for said horse."

The letter was written two years after the note was given, and after the note had been sold to the appellant. Even then only a part of the stockholders claimed that their signatures had been obtained through misrepresentation and fraud. All were agreed, however, and willing, apparently, to pay one-half of the amount still due for the horse. The query naturally arises whether it was a question of misrep-

resentation and fraud or a question of partial failure of consideration.

In any event, the makers of the note did not offer to return the stallion, although they received a letter from McLaughlin Brothers dated May 20, 1909, in reply to their letter of May 15, 1909. In this reply the McLaughlins said, among other things: "We are very sorry to learn that 'Endurant' is unsure, but if so we are prepared to perform our part of the contract on him whenever called upon to do so." They then gave directions for his shipment to Minnesota, and said that another stallion would be furnished in his place. They also informed the local horse company that the notes had been sold in the usual course of business in order to raise money to buy other horses, but the company did not see fit to bring an action to have the notes canceled, neither did they return or offer to return the stallion.

Neal, the president of the appellant bank, in answer to cross-interrogatories in his deposition and in his rebuttal interrogatories, testified that neither the plaintiff nor any of its officers had at the time they purchased the note in suit any notice, knowledge or information of fraud or misrepresentation charged to have been practiced upon the makers when the note was procured. The answers made by witness Neal were in response to the questions propounded by both counsel for the respondent and for the appellant. While it is clear that Neal was not in a position to absolutely testify what other officers of the bank knew in connection with procuring the notes from the makers, he testified as most any other man would testify in regard to a transaction which he himself conducted for the bank, and we do not consider his testimony to the effect that the other bank officers knew nothing about the matter sufficiently irregular to nullify his entire testimony and discredit him as a witness. It is clear from the record that the transaction or sale of the note in connection with other notes was made by William McLaughlin, representing McLaughlin Brothers, and witness Neal, who then occupied the position of president of the appellant bank. We think the record bears us out when we

say that the business having been transacted by Neal, as president of the bank, and William McLaughlin, on behalf of McLaughlin Brothers, and by no one else, under the facts of this case, a recovery on the note cannot be defeated, for the reason that all of the other officers or employees of the bank were not called and interrogated as to their knowledge in connection with the procuring of the note in suit, and as to whether or not they had knowledge of any misrepresentations or fraud perpetrated upon the makers.

The true rule is, no doubt, that when the maker or indorser of a negotiable instrument by competent proof establishes the fact that the note is defective for the reason that it was procured by fraud and misrepresentation, or for any other lawful reason, the burden shifts, and the holder must then prove that he is a *bona fide* holder of the note in due course. (Sec. 3516, Rev. Codes.) Under such circumstances the holder is called upon to furnish satisfactory proof that he is a *bona fide* purchaser in due course, and this is a question for the jury, save in those instances where the testimony is not only consistent with the good faith of such purchase, but is such that no fair-minded person could draw any other inference therefrom.

An examination of the record in this case will show that the instrument is complete and regular upon its face; that the appellant became the holder of it before it was overdue and without notice that it had been previously dishonored; that it took the note in good faith and for value; that at the time the note was negotiated it had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. This note was paid for by the bank by cashier's checks in the usual course of business, free, in our opinion, from all suspicion of knowledge of fraud in procuring the note so far as the bank was concerned. This transaction was supported, no doubt, by the written statement of M. M. Moore, cashier of the Salmon River State Bank, where some of the makers of the note did business, in which statement he said: "In regard to the notes of E. M. Lindsley, F. L. Taylor *et al.*,

in favor of McLaughlin Brothers, I consider it good paper and collectible.''

The fact that certain payments had been made and indorsed upon the note could in no way be considered as a suspicious circumstance in its purchase. Where payments are made upon a note, we think one would be justified in indulging the presumption, and particularly if these payments were made before due, that the obligation would be promptly paid when due. The fact that the annual interest had not been promptly paid, under the facts in this case, did not constitute a suspicious circumstance to be considered by the jury.

Since Neal's testimony clearly shows that the transaction in the purchase of said note was made by himself and that none of the other officers of the bank knew anything about the transaction, the jury was not at liberty to ignore this testimony entirely when there was nothing in conflict with it and the witness had not been impeached. It was amply sufficient to prove that the bank acquired said note as a holder in due course. While the jury is the judge of the evidence and the weight that should be given to it, it is not at liberty to ignore entirely evidence where there is no conflict in it and where there is nothing to indicate that the witness was testifying falsely.

The record shows that the jury have been misled or influenced by passion or prejudice in rendering its verdict. In case this action is retried, only such evidence as is pertinent to the issues should be admitted, and only such instructions given as are applicable to the evidence.

The judgment is reversed and the cause remanded for further proceedings in accordance with the views expressed in this opinion. Costs are awarded to appellant.

Budge, J., concurs.

MORGAN, J., Dissenting.—The inability of the members of this court to agree upon a decision in this case is due to a difference of opinion among us as to the degree of faith and credit which should be accorded to the verdict of a jury.

It is said in the majority opinion that "the evidence admitted on the trial was sufficient to show that McLaughlin Brothers' title to said promissory note was defective." In this portion of the opinion I fully concur, and will add that the evidence is amply sufficient to establish the truth of the allegations of the amended answer and that it is thereby shown that neither Delmage nor Elfers signed the note, as it was agreed they should do as a condition precedent to its delivery; that the stallion was not a sixty per cent foal-getter; that he was of little or no value for breeding purposes; that McLaughlin Brothers did not maintain a stable at Spokane, Washington, during the years 1907 and 1908 where he might be exchanged for another stallion, and that the note was delivered to them and was by them negotiated and sold in violation of the conditions and agreements under which it was made and under circumstances which amounted to fraud in procuring and disposing of it.

The only material question of fact remaining in this case is: Did appellant purchase the note without notice of any of the foregoing facts and circumstances appertaining to its execution and delivery which would render the title thereto of the payee therein named defective?

The burden of proof was upon appellant to show that it did so purchase, for, since the title of McLaughlin Brothers was defective from the time their agent procured the respondents to execute and deliver the note, the provisions of sec. 3516, Rev. Codes, apply and make it necessary for it to produce proof, satisfactory to the jury, that at the time it purchased the instrument it had no notice of any defect in the title of the person negotiating it.

In an effort to meet this requirement of the law and to establish its good faith and lack of notice of the defects in the title of McLaughlin Brothers, appellant produced its president, Mr. F. P. Neal, as a witness, who testified that he acted for appellant and that William McLaughlin acted for McLaughlin Brothers in the transaction; that the note was given for the purchase price of a stallion; that he did not know, nor was he or any officer of appellant corporation told,

that the payee had warranted the stallion in any way; that neither the appellant nor any of its officers had, at the time it received the note, any notice, knowledge or information of any other agreement made, or claimed to have been made, between McLaughlin Brothers and the makers of the note, or any of them, in connection with the transaction in which it was given, or any other agreement made between the parties at the time. The following question was propounded to this witness and the following answer given by him:

"Q. State if the plaintiff or any of its officers, at the time plaintiff purchased, took or received said note, or paid the consideration therefor, had any notice, knowledge or information that an agreement had been entered into, or was claimed to have been entered into with defendants, or with the makers of said notes, or any of them, by the said McLaughlin Bros., through one Emerson Mays, or otherwise, wherein the said McLaughlin Bros. agreed to hold each of the said defendants for only $400, the price of one share in a certain stallion, Endurant, for which the said notes were alleged to be given, if you know.

"A. No, neither the plaintiff nor any of its officers had any notice, knowledge or information of any alleged agreement, such as mentioned in this question. We never heard of Emerson Mays, and knew nothing about him or his relations to McLaughlin Bros.; neither the plaintiff nor its officers at any time knew or had known anything about any of the matters referred to in this question."

Much of the testimony given by Mr. Neal in rebuttal is of the same general character and was the only evidence adduced tending to show that appellant purchased the promissory note in question without notice to it of the fraud perpetrated upon its makers, by the agent of McLaughlin Brothers, whereby it was procured.

Appellant is a national banking corporation, and can only receive notice of defects in the title of the vendors to negotiable paper it buys by means of notice to or knowledge of its officers and agents. As such a corporation it has a board of directors, cashier and, probably, some other officers who, if

they had knowledge of the fraud by means of which this note came into the possession of McLaughlin Brothers, would bind it with notice.

While Mr. Neal's testimony may be said to establish that he had no knowledge of the circumstances attending the making of this note, it was, of course, impossible for him to know, of his own knowledge, that the officers and agents of the appellant corporation, other than himself, had no information which would amount to notice to it of the defects in McLaughlin Brothers' title to the note.

It was the testimony of Mr. Neal, and his testimony alone (for there is no other evidence upon this point in the record), which has satisfied the minds of the majority of this court and prompted it to decide that appellant had no notice of the fraud. It was this same testimony which the jury found to be insufficient to satisfy the minds of its members upon the same point. There being a total lack of evidence, other than the statements of Mr. Neal, which, by the very nature of the matter under consideration, could not have been within his knowledge, that none of the officers or agents of appellant knew of the fraud which was perpetrated when the note was given, the jury found for the defendants, and, it seems to me, correctly so.

This court, speaking through Mr. Justice Budge, in the recent case of *State v. Bouchard*, 27 Ida. 500, 149 Pac. 464, said: "It is within the province of the court to say whether or not evidence is competent or admissible, but its weight and credibility are primarily for the jury. There is no more justification for the court to assume the functions of the jury than there is for the jury to undertake to assume the duties of the court."

The Chief Justice and myself concurred in that opinion, and I still believe the portion of it above quoted to be a sound rule of law, well stated, and one that should be applied to a case of this kind with equal force as it was in the Bouchard case, where a citizen was charged with a crime and where this court did not see fit to disturb a verdict of conviction because of difference of opinion between its members and the mem-

bers of the jury as to the weight and sufficiency of the evidence.

This is not a case involving a conflict in the proof and inviting the application of that oft-repeated and frequently violated rule that "where there is a substantial conflict in the evidence and, taken as a whole, it is sufficient to sustain the verdict, a judgment based thereon will not be disturbed." In this case the jury found, as it was justified in finding, that there was a total lack of evidence, other than the testimony of Mr. Neal, that appellant was a holder of the promissory note in due course, and that his testimony was insufficient to prove that it had no notice, due to the knowledge of one or more of its officers or agents, of the defect in McLaughlin Brothers' title. This situation makes applicable the well-known rule of law that "the jury is the exclusive judge of the facts and of the weight and sufficiency of the evidence."

It appears to me that, by the foregoing decision, the members of the majority of this court have invaded the province of the jury in determining the weight and sufficiency of the evidence and have revised the judgment because the proof offered by appellant satisfied their minds, ignoring the circumstance that it was found to be insufficient, by the body of men charged by law with the duty of judging the facts, to satisfy theirs, and disregarding the law which provides that it is the minds of the jurors and not those of the members of this court which must be satisfied as to the facts of the case. I am, therefore, unable to concur.